UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | No. 5:17–CR–882–DAE (1) (2) |
| vs. | § § | |
| LUIS VALENCIA, MAURICIO VALENCIA | § § § § | |
| Defendants. | § | |

ORDER DENYING MOTION TO DISMISS
FOR LACK OF AUTHORITY TO PROSECUTE (DKT. # 164) AND HOLDING
THAT THE ACTING ATTORNEY GENERAL WAS PROPERLY APPOINTED

Before the Court is a Motion to Dismiss for Lack of Authority to Prosecute ("Motion to Dismiss") filed by Defendant Luis Valencia and joined by his co-defendant Mauricio Valencia[1] ("Defendants" or "Valencias") on November 12, 2018. (Dkt. # 164.) The Government filed a Response on November 19, 2018. The Defendant filed a Reply on November 25, 2018. (Dkt. # 172.) The Court held a hearing on this motion on November 26, 2018. Bud Paulissen, Esq. appeared on behalf of the Government, and Donald H. Flanary, III, Esq. appeared on behalf of

---

[1] At the hearing, counsel for Mauricio Valencia, Luis Valencia's brother, asked to join the motion and the Court consented. This order thus applies to both Luis and Mauricio Valencia. They have also filed a joint Motion to Dismiss the Indictment on other grounds, which will be ruled upon in a separate order. (Dkt. # 154.)

1

Defendants.

After carefully considering the memoranda and supporting documentation filed in support of and in opposition to the motion, the Court **DENIES** Defendants' Motion to Dismiss and holds that: (1) Whitaker's appointment is valid under the Federal Vacancies Reform Act ("FVRA"); (2) even if it is an invalid appointment under the Attorney General Succession Act ("AGSA"), there is still an Acting Attorney General with the authority to continue this prosecution; (3) the appointment is constitutional under the Appointments Clause of the Constitution of the United States; and (4) regardless of any statutory or constitutional problems with the appointment, the United States Attorney for the Western District of Texas has the authority to continue this prosecution. (Dkt. # 164.)

## BACKGROUND

The Defendants, along with three codefendants, are charged with: (1) Theft From Interstate Shipments, in violation of 18 U.S.C. § 659 (Counts 1 and 2); (2) Wire Fraud, in violation of 18 U.S.C. § 1343 (Counts 3–12); and (3) Money Laundering, in violation of 18 U.S.C. § 1957 (a) (Counts 13–22) in a 22 count indictment returned by a federal grand jury on November 15, 2017. (Dkt. # 1). The charges all stem from the alleged acquisition, transport, and sale of stolen oil.

On October 29, 2018, the Defendants filed an unrelated Joint Motion to Dismiss the Indictment. (Dkt. # 154.) On November 12, 2018, the Government filed a Response. (Dkt. # 163.) On November 7, 2018, Attorney General Jefferson B. Sessions ("Sessions") resigned from office and the President directed Matthew G. Whitaker ("Whitaker") to serve as Acting Attorney General.[2] Whitaker previously served as Chief of Staff to Attorney General Sessions. On November 12, 2018, the Defendants filed the instant Motion to Dismiss, arguing that Acting Attorney General Whitaker lacks the authority to prosecute them pursuant to Article II, § 2 of the Constitution, 18 U.S.C. § 508, and Rules 12(b) and 48(b) of the Federal Rules of Criminal Procedure. (Dkt. # 164.) The Government filed a response on November 11, 2018. (Dkt. # 169.) The Defendants filed their reply on November 25, 2018. (Dkt. # 172.)

LEGAL STANDARD

"The propriety of granting a motion to dismiss an indictment ... by pretrial motion is by-and-large contingent upon whether the infirmity in the

---

[2] Whether the President directed Whitaker to "serve temporarily" as acting Attorney General or whether the President "appointed" him as acting Attorney General in a permanent capacity is disputed by the parties, and a relevant question for the analysis, infra at I.B. The Government argues that Whitaker was directed to serve as acting Attorney General temporarily. (Dkt. # 169.) The Defendants argue that the President appointed him in a permanent capacity and rely on the President's tweet which stated that "Matthew G. Whitaker . . . will become our new Acting Attorney General of the United States." (Dkt. # 164 at 1.)

3

prosecution is essentially one of law or involves determinations of fact.... If a question of law is involved, then consideration of the motion is generally proper." United States v. Flores, 404 F.3d 320, 324 (5th Cir. 2005) (internal quotation marks and citations omitted). A district court is authorized to rule on such a motion to dismiss under Federal Rule of Criminal Procedure 12. Id. at 325. Constitutional questions and issues of statutory interpretation are such questions of law, and this Court has jurisdiction and is authorized to rule. See Khanh Nhat Thuy Le v. Holder, 732 F.3d 425, 427 (5th Cir. 2013); Flores, 404 F.3d at 324. See also United States v. Perez-Macias, 335 F.3d 421, 425 (5th Cir. 2003).

## DISCUSSION

The Defendants make three related arguments. First, they argue that the current Acting Attorney General, Matthew Whitaker, lacks constitutional authority to hold that office because his appointment violated the Attorney General Succession Act, 28 U.S.C. § 508. (Dkt. # 164 at 2–5.) Second, they argue that, based on Whitaker's lack of constitutional authority, the United States Attorney for the Western District of Texas, and all of the Assistant United States Attorneys for the Western District, lack the authority to prosecute them for their alleged crimes. (Id. at 6.) Finally, they argue that dismissal is warranted under Federal Rule of Criminal Procedure 48(b) because of delay stemming from a prosecution lacking constitutional authority, and "[t]here would appear to be no certain date in the

future in which this unique constitutional irregularity will be resolved." (Id. at 6–7.)

The Government argues that the Acting Attorney General's designation was valid under the Federal Vacancies Reform Act, 5 U.S.C. § 3345(a)(1). (Dkt. # 169 at 1–3.) In the alternative, it argues both that: (1) the prosecution is a valid exercise of the power of the United States Attorney for the Western District of Texas and the indirect supervision of the Acting Attorney General does not affect the prosecution; and (2) any lack of authority fails to invalidate the indictment by a federal grand jury. (Id. at 4–11.)

I. The Statutory and Constitutional Basis for the Appointment of the Acting Attorney General

Defendants argue that Whitaker's appointment violates both the Attorney General Succession Act, codified at 28 U.S.C. § 508, and the Appointments Clause, Article II, § 2, cl. 2 of the Constitution of the United States. (Dkt. # 164 2–5.) The Government responds that it is a valid appointment pursuant to the Federal Vacancies Reform Act, codified at 5 U.S.C. § 3345(a), and that an appointment under § 3345(a)(3) does not violate the Appointments Clause. (Dkt. # 169 at 3.)

A. <u>The President's Statutory Authority to Appoint the Acting Attorney General Under the Federal Vacancies Reform Act</u>

Though the United States Attorney's Office for the Western District of Texas has the statutory authority to prosecute the Defendant regardless of the constitutional or statutory authority of the Acting Attorney General, <u>see</u> <u>infra</u> at II, the Court will analyze the Defendants' argument on the merits. The Court finds that: (1) the President has the statutory authority to appoint an Acting Attorney General under 5 U.S.C. § 3345; (2) § 3345 is not in conflict with 28 U.S.C. § 508; and (3) even if the statutes were in conflict, § 508 is self-enforcing and thus there would necessarily still be an Acting Attorney General properly empowered with the duties of the office, including supervising this prosecution, even in the case of a conflict.

The threshold question is whether these statutory provisions, §§ 508 and 3345(a), are in conflict. When specific and general statutory provisions conflict, "it is familiar law that a specific statute controls over a general one 'without regard to priority of enactment.'" <u>Bulova Watch Co. v. United States</u>, 365 U.S. 753, 758 (1961) (quoting <u>Townsend v. Little</u>, 109 U.S. 504, 512 (1883)); <u>see also</u> <u>Bloate v. United States</u>, 559 U.S. 196, 226 (2010) (citing <u>Telecomms. Ass'n., Inc. v. Gulf Power Co.</u>, 534 U.S. 327, 33–36 (2002)).

Here, the Attorney General Succession Act, 28 U.S.C. § 508, as the Government notes, "codifies the default rule that the Deputy Attorney General

'may exercise' the duties of Attorney General when there is a vacancy in that office." (Dkt. # 169 at 3.) Section 508 is the more specific of the two provisions. It speaks to a succession protocol for a specified office, rather than a general protocol for all federal vacancies. The Government's contention, however, is that the (more specific) Attorney General Succession Act does not prevent the President from designating a different Acting Attorney General under the (more general) Vacancies Reform Act, § 3345—essentially, that the statutes are not in conflict, and thus that the "specific controls the general" canon of construction does not come into play. (Id.)

The Attorney General Succession Act states, in its entirety:

(a) In case of a vacancy in the office of Attorney General, or of his absence or disability, the Deputy Attorney General may exercise all the duties of that office, and for the purpose of section 3345 of title 5 the Deputy Attorney General is the first assistant to the Attorney General.

(b) When by reason of absence, disability, or vacancy in office, neither the Attorney General nor the Deputy Attorney General is available to exercise the duties of the office of Attorney General, the Associate Attorney General shall act as Attorney General. The Attorney General may designate the Solicitor General and the Assistant Attorneys General, in further order of succession, to act as Attorney General.

28 U.S.C. § 508. The Federal Vacancies Reform Act states, in relevant part:

(a) If an officer of an Executive agency (including the Executive Office of the President, and other than the Government Accountability Office) whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office—

7

(1) the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346;[3]

(2) notwithstanding paragraph (1), the President (and only the President) may direct a person who serves in an office for which appointment is required to be made by the President, by and with the advice and consent of the Senate, to perform the functions and duties of the vacant office temporarily in an acting capacity subject to the time limitations of section 3346; or

(3) notwithstanding paragraph (1), the President (and only the President) may direct an officer or employee of such Executive agency to perform the functions and duties of the vacant office temporarily in an acting capacity, subject to the time limitations of section 3346, if—

> (A) during the 365-day period preceding the date of death, resignation, or beginning of inability to serve of the applicable officer, the officer or employee served in a position in such agency for not less than 90 days.

5 U.S.C. § 3345. It is undisputed that Whitaker's appointment as Acting Attorney General falls within the purview of § 3345, as long as he or someone else is officially nominated for the advice and consent of the Senate within 210 days. 5 U.S.C. §§ 3345, 3346. The question is whether that act conflicts with § 508.

The plain text of § 508 refers to § 3345, noting that the Deputy Attorney General qualifies as the "first assistant to the Attorney General" within the meaning of § 3345. Further, the plain text of § 508 does not speak to

---

[3] § 3346 states that, "[e]xcept in the case of a vacancy caused by sickness, the person serving as an acting officer under section 3345 may serve in the office for no longer than 210 days beginning on the date the vacancy occurs." 5 U.S.C. § 3346(a).

8

presidential appointments at all, rather, it speaks to the self-executing order of succession in place within the Department of Justice itself. Thus, as the Government states, "Section 508 does not limit the President's authority to invoke the Vacancies Reform Act to designate an Acting Attorney General." *Designating an Acting Attorney General, Office of Legal Counsel*, Nov. 14, 2018 Slip Op. at *5–8 [hereinafter, OLC Opinion]. Rather, it is the opinion of the Court that § 508 provides an internal mechanism for succession in the absence of presidential appointment. See 28 U.S.C. § 508. In addition, the plain text of § 3345(a) restates the rule codified in § 508, that the first assistant (here, the Deputy Attorney General) in an office requiring Presidential appointment and Senate Confirmation shall perform the office's functions and duties in an acting capacity during a vacancy. 5 U.S.C. § 3345(a); see also NLRB v. SW General, Inc., 137 S. Ct. 929, 931 (2017). The Government also relies on the OLC Opinion, *Designating an Acting Attorney General*, which points to Circuit courts who have concluded that § 3345 is available "as an alternative to office-specific statutes." (Dkt. # 169 at 8.) These decisions provide strong support for the idea, born out of the plain text, that the statutes are not in conflict, and thus that the appointment of Whitaker is valid under § 3345. Id. (citing Hooks v. Kitsap Tenant Support Servs., Inc., 816 F.3d 550, 555–56 (9th Cir. 2016); English v. Trump, 279 F. Supp. 3d 307, 323–24 (D.D.C. 2018), appeal dismissed upon appellant's motion, No. 18-50007, 2018 WL 3526296 (D.C. Cir. July 13, 2018). Accordingly, the Court finds that the

appointment is valid under § 3345 and that § 3345 is not in conflict with the § 508.

Defendants make the further argument that the FVRA is not applicable because Sessions was directly or constructively fired by the President (relying at the hearing on Title VII jurisprudence, though they do not cite to it in their briefs). (Dkt. # 172 at 2–3.) The FVRA does not distinguish between voluntary and involuntary resignation, see 5. U.S.C. § 3345, and the Defendants have presented no evidence to suggest that Title VII jurisprudence applies in the context of political appointments. To hold that it does animates separation of powers concerns. Even if Title VII's jurisprudential framework on constructive discharge was found to apply, there has been no evidence presented that Sessions' work environment involved the sort of harassment or discrimination that rises to the level of constructive discharge. See, e.g., Pa. State Police v. Suders, 542 U.S. 129, 140 (2004) (holding that the constructive inquiry is objective: "[d]id working conditions become so intolerable that a reasonable person in the employee's position would [feel] compelled to resign"). Further, it is clear from Sessions' letter of resignation that, while he may have done so reluctantly, he did resign voluntarily. (Dkt. # 172-1.) Had Sessions chosen to refuse to resign the President could have exercised his authority to fire him, which would make the statute

inapplicable.[4] As Sessions did resign voluntarily, the FVRA, which applies when the previous officeholder "dies, resigns, or is otherwise unable to perform the functions and duties of the office," 5 U.S.C. § 3345, does apply.

### B. Regardless of Statutory Conflict, There Is an Acting Attorney General Who Has the Authority to Prosecute

Even if the Court assumes that Defendants are correct and that the statutes are in conflict, there would still be an Acting Attorney General who would have the authority to prosecute this case. Thus, the motion to dismiss must be denied.

28 U.S.C. § 508 is self-enforcing. It dictates that the Deputy Attorney General "may" exercise the duties of the Attorney General in the case of "vacancy . . . absence or disability," 28 U.S.C. § 508(a), and that the Associate Attorney General "shall act as Attorney General" if the Attorney General and Deputy Attorney General are both unavailable to exercise the duties of the office. 28 U.S.C. § 508(b). Further, it dictates that Solicitor General and the Assistant Attorneys General may be designated, "in further order of succession, to act as

---

[4] Refusing to resign is not without precedent. The former United States Attorney for the Southern District of New York, Preet Bharara, stated that he was fired by the President after refusing to resign in March of 2017. See, Maggie Haberman & Charlie Savage, U.S. Attorney Preet Bharara Says He Was Fired After Refusing to Quit, N.Y. Times, Mar. 11, 2017, https://www.nytimes.com/2017/03/11/us / p o l i tics/preet-bharara-us-attorney.html?rref=collection%2Ftimestopic%2FBharara % 2 C%20Preet&action=click&contentCollection=timestopics&region=stream&modul e=stream_unit&version=latest&contentPlacement=26&pgtype=collection.

11

Attorney General." There has been no evidence presented that former Attorney General Sessions designated anyone within the order of succession at the Department of Justice to take his place. Even assuming that the appointment of Whitaker was improper and contrary to § 508, § 508 dictates that the authority to act as Attorney General automatically lies with the Deputy Attorney General, who the Defendant agrees has the constitutional authority to act in such a capacity. (Dkt. # 164 at 3.) Therefore, even if the statutes were found to be in conflict and Whitaker's appointment was found to violate § 508, the Acting Attorney General under that section in accordance with the line of succession would have the requisite authority to oversee this prosecution, regardless of his or her presently delegated duties.

C. The President's Constitutional Authority to Appoint the Acting Attorney General under the Appointments Clause

Defendants also make a constitutional argument. They contend that Whitaker's appointment violates the Appointments Clause, Art. II, § 2, cl. 2, because the Acting Attorney General is a principal officer who requires Senate confirmation. (Dkt. # 164 at 2–5.) The Government responds that an appointment under §3345(a)(3) does not violate the Appointments Clause because it is a temporary designation which prevents it from being a principal office requiring Senate confirmation. (Dkt. # 169 at 3.)

Regardless of whether Whitaker is properly appointed under § 3345 of the FVRA, the President may not appoint a principal officer of the United States in violation of the Appointments Clause.[5] See Edmond v. United States, 520 U.S. 651, 659 (1997) (defining principal officer as those who are not supervised by any other Senate-confirmed appointee); Freytag v. Comm'r, 501 U.S. 868, 883 (1991). The relevant constitutional section, the Appointments Clause, requires that the President "nominate, and by and with the advice and consent of the Senate, . . . appoint . . . officers of the United States." U.S. Const. Art. II, § 2, cl. 2. The Clause also notes that Congress may "vest the appointment of . . . inferior officers . . . in the President alone." Id. Thus, the analysis under the Appointments Clause turns on whether the appointee is an "inferior officer" who can be appointed solely by the President, or a so-called "principal officer" who requires the advice and consent of the Senate. Edmond, 520 U.S. at 659. Stated another way, "[t]he President's designation of Mr. Whitaker as Acting Attorney General is consistent with the Appointments Clause [only] so long as [the] Acting Attorney General is not a principal office[r] [who] requires Senate confirmation." OLC Opinion at *9.

The Defendants contend that the Acting Attorney General, because he

---

[5] The Court does not, at this time, consider wholesale the constitutionality of the Congressional scheme dictated by § 3345 of the FVRA. Rather, the Court analyzes only whether this appointment to this specific position is constitutionally acceptable under Appointments Clause jurisprudence.

13

exercises the full powers of the Attorney General, is a principal officer. (Dkt. # 164 at 2–5.) The Government argues that the temporary character of the office prevents the Acting Attorney General from being a principal officer requiring Senate confirmation.[6] (Dkt. # 169 at 2–3.) It argues that for an officer to fall under the Appointments Clause he or she must hold a "continuing and permanent" position that involves the exercise of "significant authority pursuant to the laws of the United States." Lucia v. SEC, 138 S. Ct. 2044, 2051 (2018).

The Constitution contemplates the tension between, on the one hand, separation of powers concerns animated by the advice and consent requirement and, on the other, "the President's continuous need for "the assistance of subordinates." NLRB v. Noel Canning, 134 S. Ct. 2250, 2259 (2014) (quoting Myers v. United States, 272 U.S. 52, 117 (1926)). Vacancies arise and the President is authorized to fill them, even in the absence of the ability of the Senate to immediately confirm. See, e.g., the Recess Appointments Clause, Art. II, § 2, cl. 3. The reality that "the responsibilities of an office requiring Presidential appointment and Senate confirmation . . . may go unperformed if a vacancy arises and the President and Senate cannot promptly agree on a replacement" has led

---

[6] The OLC Opinion on which the Government relies does not contest that the Attorney General is "plainly a principal officer, who must be appointed with the advice and consent of the Senate." OLC Opinion at *9, citing Edmond v. United States, 520 U.S. 651, 662–63 (1997); Morrison v. Olson, 487 U.S. 654, 670–72 (1988). Rather, it argues that the *Acting* Attorney General is not a principal officer.

14

Congress to authorize the President "to direct certain officials to temporarily carry out the duties of a vacant . . . office in an acting capacity, without Senate confirmation." SW General, Inc., at 935. One such authorization is the FVRA. Similarly, the Supreme Court has upheld the temporary appointment of individuals to positions that are otherwise subject to a confirmation process. In other words, they have allowed inferior officers to do the duties of principal officers for limited amounts of time without Senate confirmation.

In United States v. Eaton, the Supreme Court held that an inferior officer could perform the duties of a principal officer "for a limited time[] and under special and temporary conditions" without turning the office into one that requires Senate confirmation. 169 U.S. 331, 341 (1898). Morrison v. Olsen reiterated the exception in Eaton. An individual can perform the duties of a principal officer "for a limited time and under special and temporary conditions" without being "transformed into the superior and permanent official" requiring Senate confirmation. 487 U.S. 654, 672–73 (1988). The position at issue in Morrison, an Independent Counsel, is perhaps most analogous to the one here, although this Court recognizes key distinctions between the position of Attorney General and the position of Independent Counsel. Edmond v. United States clarified the definition of a principal officer as one who acts without the supervision of anyone confirmed by the Senate, but it did not overrule the "special

and temporary conditions" exception recognized in Morrison and Eaton. 520 U.S. at 659.

In the most recent Supreme Court case to address the question, the appointment of the general counsel of the National Labor Relations Board was held invalid under the FVRA. SW General, 137 S. Ct. 929, 938. In concurrence, Justice Thomas noted that: (1) a directive by the President to serve under the Vacancies Reform Act—the argument the Government makes here—should be viewed as an appointment that falls within the Appointments Clause, and (2) that such an appointment "raise[s] grave constitutional concerns because the Appointments Clause forbids the President to appoint principal officers without the advice and consent of the Senate." Id. at 946 (J. Thomas, concurring). Justice Thomas went on to note that the general counsel for the NLRB was, likely, a principal officer within the Edmond definition. Id. at 948. But he maintained the Eaton exception, noting that the SW General designation was not "special and temporary" because the designation had stood for upwards of three years in an office "limited by statute to a 4-year term." Id. at 946 n.1.

Considering these cases, supra, the Court believes that, though the Attorney General fits within the Edmond definition of principal officer, the President may appoint someone to perform the duties of that office under § 3345, without the advice and consent of the Senate, if the appointment falls within the

"special and temporary" exception. See SW General, 137 S. Ct. 946, n.1 (Justice Thomas concurring); Morrison, 520 U.S. at 659; Eaton, 169 U.S. at 341. The question before the Court, then, is whether this appointment falls within the "special and temporary" exception that has been carved out.

As there has been no official order, all the Court can examine regarding the length of the appointment or designation are the President's tweets. As the Defendants note, there are two, both from November 7, 2018, at 11:44 am. (Dkt. # 172 at 4.) The first indicates that Whitaker "will become our new *Acting* Attorney General of the United States." Donald J. Trump (@realDonaldTrump), Twitter (Nov. 7, 2018, 11:44 AM), https://twitter.com/realDonaldTrump/status/1060256623439110146 (emphasis added). The second indicates that "[a] permanent replacement will be nominated at a later date." Id. With nothing else to rely on, the Court finds that, at this point, 20 days into the 210-day limit mandated by 28 U.S.C. § 3446, the appointment of Whitaker as Acting Attorney General falls within the "special and temporary" exception to the definition of principal officer carved out by Eaton and Morrison, and thus this motion must be denied.

This opinion, however, does not foreclose a later challenge should the President either: (1) make a statement that implies Whitaker's appointment is permanent; or (2) fail to nominate a permanent replacement within the time frame

designated by statute.[7] The Court does not today define the parameters of the exception, nor decide when within the 210-day period mandated by § 3346 an appointment shifts from "special and temporary" into one requiring Senate confirmation. The Court decides this case predicated upon the facts before it and will not engage in speculation as to if or when the President will nominate a permanent Attorney General.

    II.    <u>The Dispute over the Acting Attorney General's Authority Does Not Affect the Statutory Authority of the United States Attorney to Bring This Prosecution</u>

Regardless of the statutory propriety or constitutionality of the appointment of the Acting Attorney General, the Court agrees with the Government that Acting Attorney General Whitaker's "indirect involvement with this case as the acting head of the Department of Justice does not affect the validity of this proceeding." (Dkt. # 169 at 8.) The United States Attorney for the Western District of Texas is a validly-appointed officer[8] of the United States, and, as a United States Attorney, has the statutory authority to "prosecute . . . all offenses against the United States." 28 U.S.C. § 547(1). This Court, further, has jurisdiction to hear this case under 18 U.S.C. § 3231. Federal law thus authorizes

---

[7] The 210 days mandated by § 3346 will be up on May 31, 2019.
[8] The defendant does not and cannot contend that the United States Attorney for the Western District was inappropriately appointed by the President or confirmed by the Senate, nor that he lacks the authority to prosecute under 28 U.S.C. § 547. (Dkt. # 169 at 5.)

18

this criminal prosecution, and there has been no challenge in this proceeding to the constitutionality of 28 U.S.C. § 547. Additionally, pursuant to the authority granted by 28 U.S.C. § 515, an Assistant United States Attorney may conduct a grand jury proceeding. "An indictment returned by a legally constituted and unbiased grand jury . . . is enough to call for trial of the charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956). There is no allegation here of any misconduct before the grand jury, and the Court has "no authority to dismiss the indictment . . . absent a finding that [there was] prejudice[]" to the defendant based on misconduct. Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988). Further, the indictment in this case was returned before the appointment of the Acting Attorney General. (See Dkt. # 1.) Since the Defendants have been charged pursuant to a valid indictment returned by a grand jury, "a constitutional fixture in its own right," United States v. Williams, 504 U.S. 36, 47 (1992) (quotation omitted), and are being prosecuted by the United States Attorney for the Western District of Texas "within his district" under 28 U.S.C. § 547, the U.S. Attorney's Office has the authority to continue these prosecutions.

With regard to the Defendants' argument about delay under Federal Rule of Criminal Procedure 48, as the U.S. Attorney for the Western District of Texas has the authority to prosecute, Defendants' contention that there is delay in their cases because "the Department of Justice and all of its subordinate officers

lack the constitutional authority to act" is misplaced. (Dkt. # 164 at 7.) The U.S. Attorney's statutory authority to prosecute stemming from 28 U.S.C. § 547 is not affected by the designation of the Acting Attorney General, and thus there is no delay attributable to any "constitutional irregularity" that violates Rule 48.

## CONCLUSION

Having found: (1) that the appointment of Mathew Whitaker as Acting Attorney General is statutorily and constitutionally valid at this time; (2) that regardless of the statutory and constitutional validity of Whitaker's appointment as Acting Attorney General there is a statutorily designated Acting Attorney General through the operation of the Attorney General Succession Act, 28 U.S.C. § 508; and (3) finally, the United States Attorney's Office for the Western District of Texas has independent statutory authority to continue this prosecution against the Defendants, the Defendants' Motion to Dismiss the Indictment for Lack of Authority to Prosecute is **DENIED**. (Dkt. # 164).

**IT IS SO ORDERED.**

**DATE:** San Antonio, Texas, November 27, 2018

David Alan Ezra
Senior United States District Judge